IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAYMOND CAPO-DIAZ,

        Plaintiff

        v.

HUMBERTO MARRERO-RECIO, et al.,

        Defendants

CIVIL NO. 09-1629 (JP)

## OPINION AND ORDER

Before the Court are Defendants Carmen Marquez-Parrilla, Jose Juan Molina Resto and Rosemarie O'Connell's motion for summary judgment (**No. 122**), Defendant Humberto Marrero-Recio's motion for summary judgment (**No. 126**) and Plaintiff Raymond Capo-Diaz's ("Capo") opposition thereto (No. 143).[1] Plaintiff brought claims pursuant to 42 U.S.C. § 1983 alleging political discrimination and conspiracy.[2] Plaintiff also brought Puerto Rico law claims pursuant to, *inter alia*, Sections 1, 4, 6 and 7 of Article II of the Puerto Rico Constitution, and Articles 1802 and 1803 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142. For the reasons stated herein,

---

1.    Also before the Court is Plaintiff's notice of voluntary dismissal with prejudice of all of his claims against Defendant Rosemarie O'Connell (**No. 160**). Accordingly, the Court will enter judgment dismissing the claims against Defendant Rosemarie O'Connell.

2.    The Court notes that Plaintiff originally also brought 42 U.S.C. § 1983 claims alleging violations of the Fifth and Fourteenth Amendment. Said claims were dismissed by the Court (Nos. 114 and 115).

CIVIL NO. 09-1629 (JP)          -2-

Defendants' motions for summary judgment are hereby **GRANTED IN PART AND DENIED IN PART.**

## I.   MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts ("ISC UMF") were deemed uncontested by all parties hereto at the April 27, 2010 Initial Scheduling Conference ("ISC"), and are reflected in the Amended ISC Order (No. 82).

1.   At the relevant time, Defendant Jose Juan Molina-Resto ("Molina") occupied the position of Sub-Administrator of the Regulations and Permits Administration ("ARPE").

2.   At the present Plaintiff works in ARPE and occupies the position of Director of Services and Processes.

3.   Defendant Carmen Marquez-Parrilla ("Marquez") is Plaintiff's Supervisor at the present.

4.   Plaintiff is of legal age, single, and resident of Guaynabo, Puerto Rico.

5.   Plaintiff is a member of the Popular Democratic Party ("PDP").

6.   Plaintiff was a member of the Transition Committee of Former Governor Aníbal Acevedo-Vilá.

7.   Starting January 24, 2007, Plaintiff was employed with ARPE as a career managerial employee, occupying the position of Director of General Services.

CIVIL NO. 09-1629 (JP)          -3-

8.   On March 2, 2009, Defendant Marquez was appointed by former Administrator of ARPE, Hector Barriera-Torres, as Auxiliary Administrator of Internal Resources.

9.   Minerva Guadalupe holds a position of lower rank in the agency as opposed to Plaintiff.

10.  Plaintiff sent a written request to Defendants Rosemarie O'Connell ("O'Connell") and Molina requesting that remedial action be taken.

11.  A certification of years of public service stated that Plaintiff's years of service were approximately four (4) years.

12.  Plaintiff reported to the State Insurance Fund on April 30, 2009.

13.  Defendant O'Connell was the Director of Human Resources of ARPE when she received the Complaint in this case.

14.  Since October 30, 2009, Defendant O'Connell no longer works at ARPE.

15.  Defendant Humberto Marrero-Recio ("Marrero") was the Administrator of ARPE from April 24, 2009 thru October 11, 2009.

16.  Defendant Molina no longer works in ARPE.

The following facts are deemed uncontested ("UMF") by the Court because they were included in the motion for summary judgment and

CIVIL NO. 09-1629 (JP)              -4-

opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1.   Plaintiff Capó is a career employee occupying the position of Director of General Services at ARPE.

2.   Defendant Márquez has been the Auxiliary Administrator of Internal Resources at ARPE since March 2, 2009. She is Plaintiff's supervisor.

3.   Defendant Molina no longer works in ARPE. He occupied the position of Sub-Administrator of ARPE until May 26, 2009.

4.   Upon her arrival as Auxiliary Administrator of Internal Resources at ARPE on March 2, 2009, Defendant Márquez held a staff meeting where Plaintiff Capó participated.

5.   Defendant Molina met with Plaintiff Capó to listen to him regarding his situation with Defendant Márquez.

6.   Plaintiff sent an e-mail communication to Defendant Molina on March 16, 2009, upon which Molina replied that they had already met and, given that the situation involved a labor matter, he would refer it to the Director of Human Resources for the corresponding action.

7.   Plaintiff Capó acknowledged that, upon meeting with him, Molina referred the matter to the Human Resources Office, as it involved a labor matter.

8.   On March 30, 2009, Plaintiff Capó requested and was granted vacation leave until April 9, 2009.

CIVIL NO. 09-1629 (JP)          -5-

9.    From April 13, 2009 through April 24, 2009, Plaintiff was
      on vacation leave from his job at ARPE as per his request.

10.   Plaintiff does not have firsthand knowledge of Defendant
      O'Connell's political affiliation. His conclusion that she
      was a member of the New Progressive Party ("NPP") was
      based solely on the fact that she occupied a trust
      position upon the change in administration in 2009.

11.   Defendant O'Connell granted meetings to Plaintiff Capó on
      three (3) different occasions until he reported to the
      State Insurance Fund.

12.   Plaintiff acknowledges that, when he went to tell
      O'Connell his decision to report to the State Insurance
      Fund, she told him that he should do what he understood
      was best or pertinent in his decision.

13.   From March 2, 2009 through April 30, 2009, Plaintiff Capó
      worked under the supervision of Defendant Márquez for a
      total of twenty-three (23) days before reporting to the
      State Insurance Fund.

14.   On April 30, 2009, Plaintiff reported to the Puerto Rico
      State Insurance Fund.

15.   Plaintiff Capó was discharged from the State Insurance
      Fund when said agency made a determination of no
      jurisdiction.

CIVIL NO. 09-1629 (JP)              -6-

16.  On the same date he was discharged by the State Insurance
     Fund, June 11, 2009, Plaintiff received a medical
     certificate to request sick leave from ARPE.

17.  Plaintiff Capó requested and was granted sick leave by
     ARPE from June 11, 2009 through July 13, 2009.

18.  Upon receiving another medical certificate on July 13,
     2009 to request sick leave, Plaintiff requested and was
     granted by ARPE said sick leave, from which he did not
     return until November 12, 2009.

19.  There is no allegation in the Complaint of any specific
     employee at ARPE who was assigned Plaintiff's duties
     because of their political affiliation to the NPP.

20.  There is no allegation in the Complaint that an employee
     by the name of Minerva Guadalupe is a member of the NPP.

21.  Plaintiff admitted that in a document he prepared where he
     narrated facts regarding Minerva Guadalupe giving
     instructions, that he did not identify anyone as PDP or
     NPP or any kind of political preference, and that he just
     inferred it.

22.  Plaintiff also admitted that his only complaint regarding
     Minerva Guadalupe in a document he prepared was that she,
     as a union employee, could not be giving instructions to
     a supervisor, and that he does not complain that she is
     allegedly being put in that position because she is NPP.

CIVIL NO. 09-1629 (JP)              -7-

23. Plaintiff claims his duties were assigned to three other employees, to wit: Miguel Carrasquillo, Luis Rafael Vega, and Jeremías Andino.

24. Plaintiff does not identify which duties were deprived from him and assigned respectively to Miguel Carrasquillo, Luis Rafael Vega, and Jeremías Andino.

25. Plaintiff identified Miguel Carrasquillo and Luis Rafael Vega as members of the PDP in his deposition.

26. Plaintiff acknowledged that from public, general knowledge, Act 7 set off a process of layoffs for thousands of government employees.

27. Plaintiff objected to the certification and after presenting his objection to Defendant O'Connell as Human Resources Director, the certification was corrected.

28. Plaintiff continued working at ARPE after the certification of years worked was issued.

29. Plaintiff was never laid off after the certification of years worked was issued.

30. Plaintiff's salary was never affected.

31. Plaintiff acknowledged that, had the situation not been corrected, he would have been laid off pursuant to Act 7.

32. Plaintiff also acknowledged that, having been provided the opportunity to present evidence to correct the situation

CIVIL NO. 09-1629 (JP)          -8-

and after going to O'Connell at the Human Resources Office at ARPE, it was corrected.

33. Plaintiff has never received any letter of intent by Defendant Márquez to transfer Plaintiff to the Caguas Region of ARPE.

34. In fact, Plaintiff did not receive any transfer letter from any of Defendants.

35. Plaintiff admits that, despite working for the government for twenty-three (23) years, he had not kept a diary at work.

36. Plaintiff also admits that he received instructions from his attorneys to do a log as soon as he began to see unusual things.

37. Plaintiff stated he began keeping a log in anticipation of the new administration arriving out of institutional respect, and that when, according to Plaintiff, that respect was broken, he began keeping the log on March 2, 2009, the same day that Defendant Márquez arrived.

38. Estrella Ríos, Director in charge of Budget at ARPE, is a member of the PDP.

39. Plaintiff understands that Luis Font, Coordinator of Systems and Procedures at ARPE, is a member of the PDP.

CIVIL NO. 09-1629 (JP)          -9-

40. In November 2008, General Elections were held in Puerto Rico and the NPP won the governorship and the majority of the Legislature.

41. Capo resigned from his job as a government employee in Puerto Rico in 2000, he moved to the United States in 2001 and resided therein until 2001.

42. Capo filed the Complaint in this case on July 7, 2009 alleging, among other things, that he has been curtailed of his managerial and supervisory duties . . . because he is a member of the PDP.

43. Prior to Marrero's arrival at ARPE, Plaintiff met three times with the then Director of Human Resources, Defendant O'Connell, once to discuss the correction of the certification and twice more to discuss his situation with Marquez. He was referred to the head of the Human Resources Department by Defendant Molina.

44. Capo stated to O'Connell that he was not going to respect her style, "Mani's style, that Mani wanted to go above the rules of the institution with her style."

45. From April 13, 2009 through April 24, 2009, Capo was on vacation leave from his job at ARPE as per his request to that effect.

46. Capo went back to work on Tuesday, April 28, 2009 and, on that same day and early in the morning, he was already

CIVIL NO. 09-1629 (JP)          -10-

> writing an email to Marrero welcoming him to the agency
> and the same also states:[3]
>
> [Directed] [t]o Marrero . . . Molina . . .
>
> 1. I'd like to welcome the engineer Humberto Marrero Recio, who has been appointed to his honorable position as the new administrator of the Regulations and Permits Administration (ARPE, Spanish acronym).
>
> 2. I have returned from my vacation and I am at your disposal to provide both of you with professional service.
>
> 3. Continuing to follow up concerning my duties, with the engineer Jose J. Molina Resto.
>
> 4- I hope to meet you [the administrator] personally in order to get to know each other as soon as possible.
>
> Sincerely,
>
> Raymond Capo Diaz,
> Director of General Services

47. Within minutes of the April 28, 2009 email, Marrero sent Capo an email stating:[4] "It was nice to have met you. Talk to you later."

48. From April 27 through April 30, 2009, Capo did not meet with Defendant Marrero.

---

3.   The Court notes that it amended the quote provided by Defendant Marrero in his statement of proposed uncontested facts (No. 129) because the quote provided by Defendant was incorrect.

4.   The Court notes that it amended the quote provided by Defendant Marrero in his statement of proposed uncontested facts (No. 129) because the quote provided by Defendant was incorrect.

CIVIL NO. 09-1629 (JP)          -11-

49.  Barely two days after this email was sent, Capo reported himself to the State Insurance Fund and did not come back to work until November 12, 2009, after Marrero had already left ARPE.

50.  The total of two emails, one of April 28, 2009 and another one of April 30, 2009, and one letter were the only communications from Capo to Marrero.

51.  On Saturday, May 2, 2009, and at 8:45 p.m., Marrero answered Capo's email stating that:

> Raymond, give things a chance to get back to normal. I imagine you have heard about the type of manager I am when it comes to human resources. In this past week, there has been an atmosphere of unity and teamwork that has long been missing at the Regulations and Permits Administration. I need my ENTIRE team supporting me in the rough times to come.
>
> You know that the doors to my office are always open.
>
> Sincerely,
>
> Humberto Marrero

52.  Capo did not forward any other communication to Marrero after the email of April 30, 2009, which Marrero answered on May 2, 2009.

53.  When Capo sent the April 30 email to Marrero, he had already made plans on the previous day, April 29, 2009, to go to the State Insurance Fund.

54.  Capo went to get treatment at the State Insurance Fund on April 30, 2009.

CIVIL NO. 09-1629 (JP)              -12-

55. From April 30, 2009 through November 4, 2009, Capo was on sick leave as per the instructions from the State Insurance Fund.

56. Over six months elapsed from the time Capo reported to the State Insurance Fund until he returned to ARPE.

57. By the time Capo returned to ARPE on November 12, 2009, Marrero was no longer working in this agency since he had already resigned effective October 11, 2009.

58. There were approximately 145 employees of ARPE whose certification was incorrect and it had to be corrected as per the proceedings established by the Government of Puerto Rico.

59. Plaintiff has never been laid off, and his salary has never been affected.

60. Not once did Capo file any administrative charge against Marrero or any of the Defendants.

61. Allyson Goyco was appointed by Marrero, as Director of CIPE, interagency committee on permitting in ARPE, to a managerial position, she is a member of the PDP.

62. Alma Acevedo was appointed by Marrero to lead the Legal Division of ARPE, she is a member of the PDP and she was part of his staff at ARPE.

63. Plaintiff's duties are those assigned to the position 0043.

CIVIL NO. 09-1629 (JP)          -13-

64.   As part of his duties, Plaintiff would have to:

a.   direct, supervise and coordinate the tasks assigned to thirty employees, within the office of General Services, as related to the administration of the agency, its property, as the receiver of merchandise and supplies, maintenance, transportation fleet and its operators, internal mail, press and copying, and safekeeping of materials and accessories;

b.   plan, organize, and control all work plans, service itineraries and inform on work performed and the procedures to be followed;

c.   coordinate and supervise all internal activities to be performed by the office, with the input and collaboration of other subalterns of each section, consulting and employing Plaintiff's centralized liaisons;

d.   counsel the Aid Administrator A/C of Internal Resources with regards to the procedures to be followed, or as to those that may become available if such advise is requested in complex managerial situations;

e.   Receives and canalizes the direct supervision of the Aid Administrator A/C of Internal Resources or from the Top Management and converts them to general

CIVIL NO. 09-1629 (JP)            -14-

instructions with regards to all of the services that must be performed; Plaintiff employs a high level of initiative and his own criteria with regards to the duties he performs, his work is supervised through direct meetings with higher ranking managers were his reports and achievements are discussed;

f.    evaluate the regulations enacted by the agency, as well as the regulations of other agencies which regulate the services which are rendered, to determine the most practical and viable way of delivering these services;

g.    counsel and train all personnel with regards to the laws, regulations and procedures to be observed in the workplace and recommend to the Top Management, whether or not to assign additional duties to an employee, when evaluating his or her OP16;

h.    must supervise and coordinate with the Property Clerk and his aid designated by Plaintiff, with regards to the identification, accounting, and documentation of all property permanent and consumable, and report it to the Department of Treasury with a variation assessment, canalize a report of all needed resources and equipment as identified by all of the dependencies, regions and departments within the

CIVIL NO. 09-1629 (JP)                -15-

agency, make sure that all repairs and warranties on equipment are fully documented, performed and available, and that the Minicomp module system as it applies to property is kept updated;

i.   determine the most convenient date to issue the Annual Inventory on the Merchandise and Materials Warehouse, at the end of the fiscal year;

j.   coordinate with the Internal Audit Office the periodic destruction of Golden seals, pamphlets and registration labels for rotulation;

k.   certify the bills for services rendered by appointed officer in the Operations Section, delegate when needed these duties to another officer and canalize support;

l.   assign and draft circular letters, that are submitted for approval for all duties to be performed within the General Services office;

m.   supervise the intervening office clerk in order to maintain updated the Issued Permits Control Report for the regional service centers, wherein it is reported how many were issued;

n.   maintain the issuance of labels, the numeric sequence of permits and rotulation labels, that are issued from the warehouse and towards the service centers;

CIVIL NO. 09-1629 (JP)          -16-

      o.    Authorized to sign and certify as director, twenty eight official registry documents, which include **SC**-744, 7.22, 12.31, 10.97, 7.85, 7.87, 813, 781, 795.1, 754.1, 754.1a, 1091, 946, 1212, 13.4, 13.9, 10.60, 7.41; **ARPE**- 8.62, 8.65, 8.38, 8.20, 13.6, 13.19, 13.29, 8.22, 13.8 and **OC**-0-04;

      p.    every six months verify and distribute all personnel, all reports of the Human Resources Licenses Section;

      q.    identify and request the hiring of qualified personnel to provide the services needed within the agency, in coordination with the Internal Resources, and Human Resources Offices;

      r.    participate and suggest the distribution, construction, division and remodeling of available office space in the agency;

      s.    verify that the postage meter is kept funded;

      t.    coordinate the credit union meeting to be held by the employees;

      u.    corroborate that all personnel have kept their driving licenses updated;

      v.    designate and transfer to other operational positions service needs posed by cases that were left outstanding from offices whose services have been discontinued;

CIVIL NO. 09-1629 (JP)          -17-

          w.   coordinate  the  employees  entry  and  exit  from  the property and general services office;

          x.   possess  and  administrate  the  photocopy  machines' access codes and special pens used to sign official documents, to ensure proper use and availability;

          y.   travel within the jurisdiction to oversee operations at  the  regional  services  and  wherever  interagency services are rendered.

65.  Plaintiff performed the above-listed duties, or delegated these  duties  to  other  employees  under  his  direct supervision and with the express authorization from the top management until January 2009.

66.  As a result of the systematic disowning and transfer of Plaintiff's  duties,  Plaintiff  has  been  subjected  to substantial stress as well as concern for the continuation of his employment at ARPE.

## II.   **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary  judgment  serves  to  assess  the  proof  to  determine  if there  is  a  genuine  need  for  trial.   Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).   Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue

CIVIL NO. 09-1629 (JP)          -18-

as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Zambrana-Marrero v. Suárez-Cruz</u>, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); <u>Goldman v. First Nat'l Bank of Boston</u>, 985 F.2d 1113, 1116 (1st Cir. 1993); <u>Canal Ins. Co. v. Benner</u>, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. <u>See</u> <u>Mack v. Great Atl. and Pac. Tea Co., Inc.</u>, 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or

CIVIL NO. 09-1629 (JP)              -19-

otherwise, that there is a genuine issue of material fact for trial.
See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman,
985 F.2d at 1116.

**III.  ANALYSIS**

Defendants argue that summary judgment is appropriate in the
instant case because: (1) Plaintiff has failed to provide sufficient
evidence to establish a *prima facie* case of political discrimination
against Defendants Marrero, Molina and Marquez; (2) Plaintiff has
failed to provide sufficient evidence for a reasonable jury to
conclude that Defendant Marrero was involved in the challenged
employment actions against Plaintiff; (3) Defendants are entitled to
qualified immunity; and (4) Plaintiff has failed to provide
sufficient evidence to support his conspiracy claims.  Plaintiff
opposes the motions.  The Court will now consider the parties'
arguments.

**A.  42 U.S.C. § 1983**

Plaintiff brings claims under 42 U.S.C. § 1983 ("Section 1983")
alleging political discrimination and conspiracy.[5] Section 1983
creates a remedy for those who are deprived of the rights,
privileges, or immunities granted to them by the Constitution or laws

_____

5.  As the Court explained in its previous Opinion and Order in this case
(No. 114), Plaintiff's complaint does not clearly set out whether Plaintiff is
bringing a Section 1983 conspiracy claim or a 42 U.S.C. § 1985 conspiracy
claim. However, the Court will interpret Plaintiff's complaint as raising a
Section 1983 conspiracy claim because Plaintiff cannot bring a 42 U.S.C. § 1985
conspiracy claim for political discrimination. Perez-Sanchez v. Public Building
Authority, 531 F.3d 104, 109 (1st Cir. 2008).

CIVIL NO. 09-1629 (JP)          -20-

of the Unites States.   <u>See</u> <u>Rodríguez-García v. Municipality of</u> <u>Caguas</u>, 354 F.3d 91, 99 (1st Cir. 2004) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).

To have a cognizable claim under Section 1983, a party must plead and prove that: (1) Defendant acted under color of state law; (2) Plaintiff was deprived of a federally protected right, privilege or immunity; and (3) Defendant's alleged conduct was causally connected to Plaintiff's deprivation.   <u>See</u> <u>Gutiérrez-Rodríguez v.</u> <u>Cartagena</u>, 882 F.2d 553, 559 (1st Cir. 1989).

### 1.   Involvement of Marrero in the alleged deprivation[6]

For claims under Section 1983, Defendants' alleged conduct must be casually connected to Plaintiff's deprivation. <u>Id.</u> In the instant case, Plaintiff has alleged that he was deprived of his guaranteed rights when he was given a false certification as to his years of service, when he was stripped of his duties, and when Defendants conspired against him.

Defendant Marrero argues that Plaintiff has failed to provide sufficient evidence for a jury to conclude that Marrero was involved

---

6.     In his motion for summary judgment, Marrero argues that he cannot be held liable under Section 1983 because there is no supervisory liability based on a respondeat superior theory. Instead, Defendant argues that supervisory liability can only attach based on Defendant Marrero's own acts or omissions, and that, in this case, there is no evidence to support such a finding. Plaintiff agrees with Defendant that there is no supervisory liability based on respondeat superior. However, Plaintiff also states that he never alleged supervisory liability, but instead that he brought the claims against Marrero for his own acts. As such, the Court will examine Marrero's arguments in the context of the Section 1983 requirement that Defendant's alleged conduct was causally related to Plaintiff's deprivation. <u>Gutierrez-Rodriguez</u>, 882 F.2d at 559.

CIVIL NO. 09-1629 (JP)          -21-

in any of the alleged deprivations suffered by Plaintiff. In support of his argument, Defendant submits evidence that: (1) Plaintiff and Marrero exchanged friendly emails when Marrero began working in the agency; (2) Plaintiff never met Marrero; (3) after Capo reported to the State Insurance Fund, Defendant sent Plaintiff an email requesting that he give things a chance to get back to normal; (4) Plaintiff and Defendant spent minimal time working together at ARPE; and (5) Defendant's communications to Plaintiff were limited to two emails and one letter.

Plaintiff counters by providing evidence that: (1) Defendant Marrero was involved in the incorrect certification of Plaintiff's years of service that could have led to Plaintiff's dismissal; and (2) Marrero intervened with the process for determining the seniority certifications. Examining the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient evidence for a jury to conclude that Marrero was directly involved in some of the alleged deprivations suffered by Plaintiff.

## 2. **Political Discrimination Claim**

Government employees who do not occupy policy-making positions of trust and confidence are protected against adverse employment actions based on their political affiliation. Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006). A *prima facie* case of political discrimination requires showing that: (1) Plaintiff and Defendant belong to opposing political affiliations; (2) that

CIVIL NO. 09-1629 (JP)          -22-

Defendant knows of Plaintiff's political affiliation; (3) that a challenged employment action occurred; and (4) that Plaintiff's political affiliation was a substantial or motivating factor behind the challenged employment action. Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir. 2008). Even if Plaintiff succeeds in establishing a *prima facie* case, Defendant can still prevail by articulating nondiscriminatory reasons for the challenged employment actions and demonstrating, by a preponderance of the evidence, that the same decision would have been made regardless of Plaintiff's political affiliation. See Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993).

> a. *Plaintiff and Defendant are from opposing political affiliations*

In the instant motions, no question is raised by Defendants regarding whether Plaintiff and Defendants are from opposing political affiliations. As such, the Court will not waste time on this issue.

> b. *Defendants knowledge of Plaintiff's political affiliation*

Defendants Molina and Marrero argue that they were not aware of Plaintiff's political affiliation to the PDP at the relevant times to this case. Defendant Marquez did not argue that she was not aware of Plaintiff's political affiliation. In fact, Defendant Marquez states in her memorandum of law in support of the motion for summary judgment (No. 123, p. 14) that there is evidence on the record for

CIVIL NO. 09-1629 (JP)          -23-

a jury to find that she was aware of Plaintiff's affiliation with the PDP. Accordingly, the Court will not discuss Defendant Marquez in its analysis of this issue.

Plaintiff counters that said Defendants were aware of his political affiliation because of Plaintiff's involvement with the PDP. Specifically, Plaintiff: (1) was a member of the Transition Team of the 2008 to the current administration; (2) held the trust position of Administrative Assistant to the Administrator of ARPE with the PDP Administration; (3) was a delegate representing ARPE before the State Electoral Commission, for the PDP Administration, during the recount of the 2004 general elections; and (4) has served as Electoral Coordinator and President of Community Committees. Furthermore, Plaintiff has produced evidence that Defendant Marrero was a also a member of the Transition Committee for the PDP in which Plaintiff participated.

After considering the arguments and evidence, the Court finds that: (1) Plaintiff has failed to point to sufficient evidence for a reasonable jury to conclude that Molina was aware of Plaintiff's political affiliation; and (2) Plaintiff has pointed to sufficient evidence for a reasonable jury to find that Defendant Marrero was aware of Plaintiff's political affiliation. The Court finds that the evidence of Plaintiff's involvement in the PDP is insufficient, by itself, for a reasonable jury to conclude that Molina was aware of Plaintiff's affiliation with the PDP. Put simply, no evidence has

CIVIL NO. 09-1629 (JP)           -24-

been pointed to by Plaintiff showing that Defendant had any knowledge of Plaintiff's involvement with the PDP.

With regard to Defendant Marrero, the Court finds that the evidence of Plaintiff's involvement in the PDP, which includes Plaintiff's involvement in the Transition Team of the 2008 Administration, and of Marrero's involvement in the Transition Team of the 2008 Administration is sufficient evidence for a reasonable jury to find that Marrero was aware of Plaintiff's political affiliation with the PDP.

Since Plaintiff has not pointed to sufficient evidence to show that Molina was aware of Plaintiff's political affiliation, the Court determines that Plaintiff has failed to make out a *prima facie* case of political discrimination against Molina. Accordingly, Plaintiff's political discrimination claims against Molina fail.

### c.    *Challenged Employment Action*

In cases such as this one, where the challenged employment action falls short of discharge, Plaintiff must show, by clear and convincing evidence, that he was subjected to an unreasonably inferior work environment when compared to the norm of the position. Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218-20 (1st Cir. 1989). The change must be "of a magnitude that would cause 'reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Bisbal-Ramos

CIVIL NO. 09-1629 (JP)          -25-

v. City of Mayaguez, 467 F.3d 16, 22 (1st Cir. 2006) (quoting Agosto-de-Feliciano, 889 F.2d at 1217-20).

Defendants argue that summary judgment should be granted because Plaintiff continues to work at ARPE and because his salary has not been reduced. Defendants also argue that Plaintiff has not shown that the actions taken against him have led him to question his affiliation with the PDP. Defendants state that Plaintiff was only subjected to a temporary change in duties that was not sufficiently severe to meet the unreasonably inferior standard.

After considering the arguments and evidence, the Court finds that Defendants' arguments fail. First, the Court notes that the fact that Plaintiff's salary has not been reduced is not sufficient for the Court to find that Plaintiff has not suffered an adverse employment action. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 766-67 (1st Cir. 2010) (finding that a jury could find that there was an adverse employment action even though salary was not reduced).

Further, Plaintiff has presented evidence that: (1) Defendants incorrectly certified his years of service which could have led to his dismissal; (2) Defendant Marquez has taken various actions which have deprived Plaintiff of his supervisory functions and his job responsibilities; and (3) Defendant Marquez removed Plaintiff from the position of Interagency Coordinator for the Management of Emergencies after she led him to believe that he would be appointed

CIVIL NO. 09-1629 (JP)          -26-

to said position. Plaintiff also has provided evidence of the duties of his position, UMF 63 and 64, and has provided evidence that many of his duties were stripped from him.

Based on said evidence, the Court finds that Plaintiff has pointed to sufficient evidence on the record to show that he is suffering from an unreasonably inferior work environment when compared to the norm of the position and therefore that he has suffered an adverse employment action.

> d. Plaintiff's political affiliation as a substantial or motivating factor behind the challenged employment actions

To establish a *prima facie* case of political discrimination, Plaintiff must show that his or her political affiliation was a substantial or motivating factor behind the challenged employment actions. Welch, 542 F.3d at 938-39. Plaintiff can meet his or her burden by presenting sufficient direct or circumstantial evidence for a jury to reasonably conclude that Plaintiff's political affiliation was a substantial or motivating factor behind the challenged employment action. Acevedo-Diaz, 1 F.3d at 66; Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991).

Defendants Marrero and Marquez argue that there is no evidence on the record to support a finding that the acts taken by them were motivated in any way by Plaintiff's political affiliation. In support of their arguments, Marrero presented evidence that Plaintiff was working for a very short period of time at ARPE with him prior to

CIVIL NO. 09-1629 (JP)          -27-

Plaintiff reporting to the State Insurance Fund on April 30, 2009. Said Defendant also presented evidence that, during that short period of time, Defendant exchanged friendly communications with Plaintiff. Defendants also presented evidence that Defendant Marrero was no longer working at ARPE when Plaintiff returned to ARPE after reporting to the State Insurance Fund.

Defendant Marquez argues that Plaintiff has failed to provide sufficient evidence to support a finding that his political affiliation was a substantial or motivating factor in the acts taken against him. She argues that Plaintiff simply restated allegations in the complaint in his deposition without providing evidentiary support. Specifically, Defendant states that Plaintiff has failed to present evidence (1) that members of the NPP have been treated differently; (2) that Jeremias Andino and Maria Perez are members of the NPP; (3) regarding how Minerva Guadalupe was put in charge of supervising Plaintiff; and (4) of which duties have been removed from Plaintiff and given to other employees. Defendant also states that Miguel Carrasquillo and Luis Rafael Vega, two of the employees who allegedly received duties that belonged to Plaintiff, were members of the same political party as Plaintiff.

After considering the arguments and evidence, the Court finds that a reasonable jury could conclude that Plaintiff's political affiliation with the PDP was a substantial or motivating factor in Defendant Marrero and Defendant Marquez's acts against Plaintiff.

CIVIL NO. 09-1629 (JP)          -28-

Plaintiff has proffered evidence that, around the time relevant to this case, there had been a recent change in the administration in power from the PDP to the NPP and that the challenged employment actions occurred shortly after said change in administration. Also, Plaintiff has provided evidence that Plaintiff and Defendants Marrero and Marquez are from competing political persuasions and that Plaintiff was active in his support of the PDP. Said evidence is sufficient to allow a jury to determine that Plaintiff's political affiliation was a substantial or motivating factor in the challenged employment actions. See Acevedo-Diaz,1 F.3d at 69.

> e.   *The same action would have been taken in the absence of Plaintiff's protected conduct*

After Plaintiff establishes a *prima facie* case, Defendant can still prevail by articulating nondiscriminatory reasons for the challenged employment actions and demonstrating, by a preponderance of the evidence, that the same decision would have been made regardless of Plaintiff's political affiliation. Id. at 66.  In the instant case, no arguments regarding this issue were introduced by Defendants and, as such, the Court will not address it.

### 3.   Conspiracy Claim

A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury

CIVIL NO. 09-1629 (JP)          -29-

upon another, and an overt act that results in damages." <u>Estate of</u>
<u>Bennett v. Wainwright</u>, 548 F.3d 155, 178 (1st Cir. 2008) (quoting
<u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir. 1988)).  Plaintiff must
"prove not only a conspiratorial agreement but also an actual
abridgement of some federally-secured right." <u>Nieves v. McSweeney</u>,
241 F.3d 46, 53 (1st Cir. 2001) (citing <u>Earle</u>, 850 F.2d at 844).

In his complaint, Plaintiff alleged that Defendants engaged in
a conspiracy to have him removed from his career position at ARPE.
Defendants argue that Plaintiff's conspiracy claims fails because
Plaintiff has not put forth any facts to support a finding that there
is an agreement between Defendants. Plaintiff did not oppose
Defendants' argument in his opposition to the motion for summary
judgment.

After considering the arguments, the Court finds that Defendants
are entitled to summary judgment on Plaintiff's conspiracy claims.
Plaintiff has failed to point to any evidence supporting a finding
that there was some form of conspiratorial agreement between
Defendants. Instead, Plaintiff has relied on conclusory allegations
that there was some sort of agreement between the parties. This is
not sufficient to survive summary judgment. Accordingly, the Court
**GRANTS** Defendants' motion for summary judgment on Plaintiff's
conspiracy claims.

CIVIL NO. 09-1629 (JP)          -30-

### B.    **Qualified Immunity**

Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). Qualified immunity has a two-part test that requires that the Court "decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. at 268-69 (quoting Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009)).  A right is considered to be "clearly established" when the contours of the right are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). As such, a right is considered to be "clearly established if, at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional."  Id. (citing Maldonado, 568 F.3d at 269).

Defendant Marquez states that she is entitled to qualified immunity because the facts alleged or shown by Plaintiff do not make out a violation of a constitutional right. Said Defendant presented no arguments as to whether the right was clearly established at the time of the alleged violations. Defendant Marrero argues that he is entitled to qualified immunity because there is no clear criteria in short of dismissal claims because the United States Supreme Court's

CIVIL NO. 09-1629 (JP)            -31-

decision in <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62 (1990), and the First Circuit decision in <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d 1209 (1st Cir. 1989) proscribe differing standards.

After considering the arguments, the Court finds that Defendants are not entitled to qualified immunity. With regard to Defendant Marquez's argument, the Court finds, as explained above, that Plaintiff has presented sufficient evidence for a jury to conclude that Marquez engaged in political discrimination against Plaintiff. Accordingly, said Defendant's argument fails. Further, Defendant Marrero's argument that there is no clearly established law regarding short of dismissal claims fails because, contrary to Marrero's contention, both <u>Rutan</u> and <u>Agosto-de-Feliciano</u> make clear that the acts alleged here, subjecting an employee to unreasonably inferior working conditions because of his political affiliation, violate the First Amendment. <u>Bisbal-Ramos</u>, 467 F.3d at 25-26. Accordingly, Defendants Marrero and Marquez are not entitled to qualified immunity.

        C.   **Puerto Rico Law Claims**

In the instant case, Plaintiff brings claims under Puerto Rico law. Defendants argue that said claims should be dismissed if the Court determined that Plaintiff's federal law claims under 42 U.S.C. § 1983 failed. In light of the Court's determination that Plaintiff

CIVIL NO. 09-1629 (JP)          -32-

still has some claims under federal law, the Court denies Defendants' request to dismiss the state law claims.

## IV.   <u>CONCLUSION</u>

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions for summary judgment. The Court will enter a separate judgment dismissing: (1) Plaintiff's conspiracy claims against all of Defendants; and (2) Plaintiff's political discrimination claims against Defendant Molina. Also, in light of the notice of voluntary dismissal, the Court will enter judgment dismissing all of Plaintiff's claims against Defendant O'Connell. Still pending before the Court are Plaintiff's claims of political discrimination against Defendants Marquez and Marrero, and his Puerto Rico law claims against Defendants Marrero, Marquez, and Molina.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of November, 2010.


                          <u>s/Jaime Pieras, Jr.</u>
                            JAIME PIERAS, JR.
                       U.S. SENIOR DISTRICT JUDGE